**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMHITA GERA, Derivatively on Behalf of VIRGIN GALACTIC HOLDINGS, INC.<br><br>     Plaintiff,<br><br>  v.<br><br>RICHARD BRANSON, CHAMATH PALIHAPITIYA, MICHAEL MOSES, GEORGE WHITESIDES, MICHAEL COLGLAZIER, WANDA AUSTIN, ADAM BAIN, TINA JONAS, CRAIG KREEGER, EVAN LOVELL, GEORGE MATTSON, JAMES RYANS, W. GILBERT WEST, ANTHONY BATES, IAN OSBORNE, JACQUELINE D. RESES, and ANDREA WONG,<br><br>     Defendants,<br><br>VIRGIN GALACTIC HOLDINGS, INC.<br><br>     Nominal Defendant. | Case No.:  1:24-cv-04795<br><br>**VERIFIED SHAREHOLDER<br>DERIVATIVE COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Samhita Gera ("Plaintiff"), by and through Plaintiff's undersigned counsel, derivatively and on behalf of Nominal Defendant Virgin Galactic Holdings, Inc. ("Virgin Galactic" or the "Company"), a/k/a Social Capital Hedosophia Holdings Corp. ("SCH") submits this Verified Shareholder Derivative Complaint (the "Complaint") against certain of the Company's directors, officers, and/or controlling shareholders for violations of their fiduciary duties and related securities breaches arising out of the sale of Company securities prior to the disclosure of adverse information regarding Virgin Galactic's launch of its commercial spaceflight program. Plaintiff's allegations are based upon her personal knowledge as to herself and her own acts as well as upon information and belief. They were developed from the investigation and analysis by Plaintiff's counsel, which included a review of documents produced by Virgin Galactic in response to Plaintiff's demand under 8 Del. § 220 and publicly available information, including but not limited to Virgin Galactic's filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, legal filings, news articles, securities analysts' reports, lawsuit filings, and other information in the public record.

## I.    INTRODUCTION

1.      This is a shareholder derivative action that stems from the unlawful sale between July 10, 2019, and October 14, 2021 (the "Relevant Period") by some of the Company's fiduciaries of more than $1.3 billion of Virgin Galactic common stock.

2.      This action is filed against Defendants Branson, Palihapitiya, Michael Moses ("Moses"), Whitesides, Colglazier, Wanda Austin ("Austin"), Adam Bain ("Bain"), Tina Jonas ("Jonas"), Craig Kreeger ("Kreeger"), Evan Lovell ("Lovell"), George Mattson ("Mattson"), James Ryans ("Ryans"), W. Gilbert West ("West"), Anthony Bates ("Bates"), Ian Osborne ("Osborne"), Jacqueline D. Reses ("Reses"), and Andrea Wong ("Wong"), (collectively, the "Individual Defendants," and together with Virgin Galactic, the "Defendants") for breaches of their fiduciary

duties as current and/or former controlling shareholders, directors and/or officers of the Company, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets; against Defendants Branson, Moses, and Whitesides (collectively, the "Legacy VG Defendants") for aiding and abetting certain breaches of fiduciary duty by Defendants Palihapitiya, Bain, Bates, Osborne, Reses, Ryans, and Wong (collectively, the "SCH Defendants"); against the Individual Defendants—except Defendant Moses—for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); and against Defendants Branson, Palihapitiya, Whitesides, Moses, and Colglazier for contribution under Sections 10(b) and 21D of the Exchange Act.

3.  The Individual Defendants used material nonpublic information regarding Virgin Galactic's commercial spaceflight program for their own personal benefit, including: (1) the disastrous test flight in February 2019 on which the horizontal stabilizers on the Company *Unity*'s spaceship were destroyed; (2) the *Unity*'s undisclosed dangerous deviation from the landing cone on a highly-publicized flight in July 2021, which constituted a violation of Federal Aviation Administration ("FAA") regulations and lead to the grounding of the Company's spaceships and the suspension of its commercial flight license; and (3) significant and recurring delays in the launch of the company's commercial operations due to necessary spacecraft repairs. The Company's board of directors (the "Board") had strong financial and personal connections to the inside traders, deliberately concealed that information from the public in violation of their fiduciary duties while fully aware of the insiders' intention to bail out and authorized Virgin Galactic to raise close to $1 billion from investors, a dubious fix for the precarious state of the Company's financial condition.

4.  In 2004, Richard Branson ("Branson") formed Virgin Galactic, a putative space tourism company, with the objective of offering suborbital flights for commercial passengers. For

a decade after its formation, Virgin Galactic worked with the aerospace company Scaled Composites to develop a spacecraft prototype. However, in October 2014, the Company's test flight of one of Scaled Composites' space shuttles, the *Enterprise*, ended in disaster. The spacecraft disintegrated mid-flight, killing the co-pilot and seriously injuring the pilot. At that time, Scaled Composites was in the process of developing another prototype, the *Unity*, for Virgin Galactic. After the October 2014 accident, Virgin Galactic severed its relationship with Scaled Composites and replaced it with The Spaceship Company (a wholly-owned subsidiary of Virgin Galactic). Despite not receiving any reliable engineering drawings from Scaled Composites, The Spaceship Company took over the construction of the *Unity* to use it as a commercial passenger spacecraft. At the same time, the Company assiduously drummed up investor enthusiasm for its purportedly imminent rollout of passenger spacecraft.

5.    Several years later, after false fits and starts and dwindling cash reserves, the *Unity* again faltered when its horizontal stabilizers were destroyed in a February 2019 test flight. The critical damage notwithstanding, Defendant George Whitesides ("Whitesides") – CEO of the Company's predecessor, Legacy VG, from May 2010 until the Merger, CEO and director of Virgin Galactic from the Merger until July 2020, and Virgin Galactic's Chief Space Officer from July 2020 until February 2021 – said the flight went smoothly and Branson, in a press release about the flight, expressed his hope that the customer journeys that the Company will provide will be "as flawless as the spaceship itself."

6.    Coverage of the February 2019 test flight was a sensitive subject for Virgin Galactic because in July 2019, a merger of the Company with a SPAC, Social Capital Hedosophia Holdings Corp. ("Social Capital"), which would take the Company public, was announced for October of that year. After the merger, in December 2019, Defendant Chamath Palihapitiya ("Palihapitiya")

– who had been Chair and CEO of Social Capital since May 2017 until he became Board Chair and director of Virgin Galactic from the Merger in Oct 2019 until February 17, 2022 – sold 3,800,000 VG shares for nearly $95,000,000.

7.      Palihapitiya's sale preceded the publication of a *Washington Post* article in February 2021, which disclosed the true nature of the February 2019 test flight. Repairs and maintenance of the *Unity* and its mothership, the *Eve*, proceeded at a problematic pace. Despite not being ready and due to pressure from competing commercial space tourism companies and lack of revenue, the Company announced that the founder and controlling shareholder of Virgin Galactic, Defendant Richard Branson ("Branson"), would be aboard the *Unity*'s inaugural flight in July 2021. In the interim, in March 2021, Palihapitiya sold 6,200,000 Virgin Galactic shares for over $215,000,000, and in April 2021, Branson sold 5,584,000 Virgin Galactic shares for over $152,000,000.

8.      Unsurprisingly, the July 2021 flight with Branson aboard was a dangerous near-catastrophe. It strayed from its landing cone and FAA airspace, thus imperiling the lives of its passengers. Neither the press release nor the interviews on the historic July 2021 flight mentioned a word about the dangerous deviation. Instead, Defendant Michael Colglazier ("Colglazier") – CEO and a director of Virgin Galactic since July 2020 and its President since February 2021 – described it as "perfect," and Branson called it "utterly flawless."

9.      Eventually, the Federal Aviation Administration ("FAA") learned of the dangerous deviation, and on August 3, 2021, it met with Virgin Galactic to discuss the July 2021 flight. On August 11, 2021, the FAA issued a determination that the July 2021 flight should be deemed a "mishap" and required the Company to generate a final report and implement corrective actions "prior to conducting further FAA-licensed launches." That very day, Branson commenced a sell-

off of 10,416,000 Virgin Galactic shares for nearly $305,000,000.

10.     The truth about the July 2021 flight was disclosed to the public on September 1, 2021, with the publication of an article in *The New Yorker*. On September 2, 2021, the FAA publicly announced that the *Unity* was grounded. It took nearly two years for Virgin Galactic to finally make good on its some twenty-year-old promise to carry commercial passengers to space when, on June 29, 2023, the *Unity* took members of the Italian Air Force and the Italian National Research Council into sub-orbital flight.

11.     Needless to say, investors were less than pleased with the Company's misconduct and the disloyalty of its fiduciaries. In addition to the current action, the above set of facts led to the filing in this District of a securities action ("Securities Class Action") on May 28, 2021, *Lavin v. Virgin Galactic Holdings*, 1:21-cv-03070, which has withstood two motions to dismiss, and remains pending, as well as three shareholder derivative actions, which have been consolidated under *In re Virgin Galactic Holdings, Inc. Derivative Litigation*, 1:22-cv-000933, which is stayed. Most recently, a shareholder derivative action on the same facts has also been filed in the Central District Court of California, *Molnar et al. v. Branson et al.*, 8:24-cv-775.

## II.     FACTUAL BACKGROUND

### A.  Branson launches Virgin Galactic

12.     In 1999, Branson registered the Virgin Galactic business name. In 2004, he founded Virgin Galactic as a space tourism company. Virgin Galactic was a joint venture between Legacy VC, Virgin Galactic's operational predecessor, and Scaled Composites.

13.     Scaled Composites was founded by Burt Rutan in 1982 and is an innovative and unconventional aircraft design and manufacturing company. Scaled Composites won the $10 million Ansari X prize for sending its spaceplane SpaceShipOne into suborbital flight twice in two weeks. Its focus has always been on the development of prototype aircraft. Scaled Composites'

website boasts that the company is able to deliver on a short schedule, enabling it to fly an average of one new aircraft type a year. Nevertheless, Virgin Galactic licensed the SpaceShipOne technology in a bid to use it for the development of commercial spacecraft for private, paying passengers, ignoring that Scaled Composites had not even developed a rocket yet. More significantly, Scaled Composites' designs, being for prototypes and not commercial vehicles, lacked safety latches and hooded covers on switches and knobs and skipped redundancies. The company also eschewed the industry's customary testing procedures. The Securities Class Action complaint cites FE 8's report that the company would gather data by throwing models off the air traffic control tower and test structural integrity by having employees jump on them.

14. The Company's space tourism ambitions took a devastating blow on October 31, 2014, when its experimental spacecraft, SpaceShipTwo (VSS Enterprise), suffered a catastrophic in-flight breakup during a test flight over the Mojave Desert in California. This tragic accident was more than just a setback; rather, it exposed critical safety issues and cast a shadow over the future of the Company. Investigators determined the cause of the crash to be pilot error. Upon receiving a text from the Company's CEO stating, "BAD DAY," Branson swiftly responded, "On my way." As a result of the accident, the Company suspended all ticket sales despite having sold over 600 tickets for future commercial space flights.

15. The accident was not an isolated mistake. The National Transportation Safety Board ("NTSB") investigation revealed that the Legacy VG's design for SpaceShipTwo did not adequately prevent pilot error from causing such catastrophic consequences. Furthermore, the FAA criticized Legacy VG for aggressively selling tickets to paying passengers for future spaceflights before their spacecraft had even proven safe for test pilots. The VSS Enterprise crash highlighted the inherent dangers of space travel and the need for rigorous safety protocols. It forced

Legacy VG to re-evaluate its design and implement stricter pilot training procedures. While the Company eventually resumed test flights and achieved suborbital space tourism in 2021, the 2014 incident serves as a stark reminder of the risks involved in pushing the boundaries of spaceflight.

16.     Following the tragic explosion in 2014, Virgin Galactic ended its affiliation with Scaled Composites. However, they still maintained ownership of a partially constructed spacecraft known as VSS Unity, intended to replace the destroyed Enterprise. The Company also retained possession of "Eve," the mothership named after Branson's mother, which would be responsible for releasing Unity into space. The construction of Unity was completed by Virgin Galactic's sister company, The Space Company, but faced numerous challenges due to the absence of engineering diagrams, requiring frequent improvisation.

17.     In February 2016, Branson hosted an event in the Mojave Desert for the grand unveiling of the new spacecraft, Unity, and to showcase the Company's progress and imminent success in the burgeoning space tourism industry. A star-studded guest list included celebrities and, more importantly, a select group of enthusiastic investors. These individuals, each having paid a hefty sum of $250,000, were promised a coveted spot in a future spaceflight. Branson used the unveiling event as a strategic opportunity to manage investor expectations. While acknowledging delays, he downplayed their severity, assuring the public that the Company remained on track for imminent commercial space travel.

18.     By 2018, Virgin Galactic and Branson had exhausted around $1 billion in funds, yet the Company was far from being able to commence commercial space operations. Both Virgin Galactic and Branson were facing financial constraints. Branson initiated efforts to secure additional funds, sell off a portion of his investment in Virgin Galactic, and retain majority ownership.

19.     In October 2018, Virgin Galactic announced plans to merge with SCH, a special acquisition company ("SPAC") that was founded for the purpose of merging with a private company and taking it public. SCH was founded by Defendant Palihapitiya, a former Facebook executive and venture capitalist. The merger allowed Virgin Galactic to become a publicly traded company and access capital markets. It also allowed Palihapitiya to benefit significantly from his SPAC investment and Branson to sell a significant portion of his stake in Virgin Galactic while maintaining a close involvement with the Company.

20.     However, SCH shareholders were not informed about the critical situation at Legacy VG before the companies merged. These undisclosed issues would later cause problems for the newly formed company. During the period leading up to the merger, the individual defendants working for SCH continuously told investors that Virgin Galactic was about to achieve its goal of commercial space travel and generate significant income. However, in reality, Virgin Galactic was spending money quickly and wasn't bringing in any revenue. Despite this, the defendants told the public that Virgin Galactic was on the verge of commercializing space travel. In fact, due to severe design and safety problems with Legacy VG's spaceships, the Company was nowhere near ready for safe commercial spaceflights. These critical facts, along with others, were known by the defendants before and after the merger.

21.     However, in 2018, it was revealed that even though Legacy VG was still nowhere near ready to launch its commercial space flights, Legacy VG and Branson had already spent nearly $1 billion, a rate much faster than incoming revenue. Both Legacy VG and Branson found themselves in a financial bind, prompting Branson to seek ways to generate capital and sell a portion of his investment in Legacy VG while still maintaining control of the company. As of

2018, numerous companies were vying for success in the space tourism industry. The key competitors were Jeff Bezos' Blue Origin, LLC and Elon Musk's SpaceX.

22.     After the merger, Virgin Galactic inherited spacecraft that were considered less safe compared to those of Blue Origin, LLC and SpaceX. This was mainly because Virgin Galactic, unlike Blue Origin and SpaceX, used artificial intelligence (AI) instead of humans, thereby reducing the potential risks in the event of a crash. It was later revealed by Nicholas Schmidle, an insider at Virgin Galactic and writer for *The New York Times*, in his book titled "*Test Gods: Virgin Galactic and the Making of a Modern Astronaut*," that there were significant differences between Virgin Galactic's space model and that of Blue Origin and SpaceX. Specifically, Virgin Galactic emphasizes the human factor in its philosophy. Conversely, the competitor companies are led by individuals who made their fortunes in the tech industry and believe "human fallibility" can be overcome through programming. However, Branson has always been captivated by the romanticized image of test pilots with scarves fluttering in the wind. Branson's approach ultimately increases the possibility of things going wrong.

23.     On February 22, 2019, Unity completed a space journey while discussions about the SCH and Legacy VG merger were ongoing. During the flight, Unity's horizontal stabilizers were damaged, which were discovered upon landing. Legacy VG and Branson knew the merger would likely fail if the public learned about the safety issues. However, they concealed the stabilizer's destruction and presented the flight as a success to ensure the merger's financial benefits in 2019.

24.     In July 2019, when the Relevant Period began, Legacy VG's near-space travel seemed imminent. The Company assured investors their spaceship was nearly ready, like a safe airliner. However, a review of Defendants' document production, press releases, and SEC filings

show they knew of severe safety issues, including the issue of Unity's horizontal stabilizers, and that repairs were needed. As evidenced by the Board's meeting minutes throughout the Relevant Period, Defendants knew about these serious safety issues. They hid this information from the public to maintain investor confidence, though the Company was losing money. Despite knowing of the vehicle's safety issues, Defendants hid this information and released misleading statements about the safety of Unity and Eve.

25.     The merger was able to close under these deceptive circumstances, resulting in unfair and disadvantageous terms to the Company and its shareholders. This deceptive practice (the "Overpayment Misconduct") revolved around Legacy VG's undisclosed situation. Specifically, Legacy VG's previous shareholders were to be given 130 million shares of Virgin Galactic valued at $1.3 billion, whereas SCH's shareholders would receive only 65 million shares. The SCH Defendants were driven by personal gain to engage in this misconduct, as they stood to profit significantly from the merger through substantial compensation, stock awards, and the opportunity to sell their Virgin Galactic shares at inflated prices. The Legacy VG Defendants were similarly motivated to aid in this misconduct as they would benefit from the merger's completion.

26.     On October 25, 2019, Virgin Galactic successfully completed the Merger, marking its status as the inaugural publicly traded space tourism company. This event allowed Branson to sell $152.1 million worth of his own shares while maintaining control as a majority stockholder. As part of the Merger agreement, Branson and Palihapitiya selected former employees to serve on Virgin Galactic's Board and retained control over the majority of the company's voting power.

27.     The truth gradually came to light, with Virgin Galactic postponing scheduled flights without providing sufficient explanations. This raised concerns among external observers about potential issues with the company's spacecraft. On August 3, 2020, after the market had closed, it

was announced that Defendant Branson would not be flying in a Virgin Galactic spacecraft that year, despite having previously assured investors otherwise. Following this news, the company's stock price dropped $3.30 per share, or 13.7%, closing at $20.72 on August 4, 2020.

28.     On December 12, 2020, Virgin Galactic's December test flight for Eve and Unity resulted in a rocket system failure, which the Company knew about but kept secret. Various news outlets reported the failed ignition, but the cause was not disclosed. The stock price plummeted by 17.4% the next trading day. However, Virgin Galactic quickly recovered its reputation in February 2021 by announcing a fix for the undisclosed issue and scheduled another test flight, sending the Company's share price soaring again, closing at $53.79 per share on February 1, 2021.

29.     Nicolas Schmidle's book publicly disclosed that a problem during Virgin Galactic's spaceflight in February 2019 had put everyone on board at serious risk of death. *The Washington Post* published a critique of Schmidle's upcoming book the same day after trading ended. Schmidle had firsthand knowledge as he had been embedded with Legacy VG from 2014 until July 2018 and had conducted interviews with those present during the February 2019 flight. During one interview, Todd Ericson, then vice-president of safety and test at Virgin Galactic, informed Schmidle about the high level of danger involved in the February 2019 flight, stating, "I don't know how we didn't lose the vehicle and kill three people." Following this news, the Company's share price dropped to $48.58 per share on February 2, 2021.

30.     That same day, a rocket owned by SpaceX, Virgin Galactic's competitor, exploded on the launchpad. This incident made the public believe that Virgin Galactic's rockets were more advanced than those of SpaceX, causing a rapid increase in the Company's stock price. The stock closed at $57.12 per share on February 3, 2021. However, on February 25, 2021, Virgin Galactic announced that they had unintentionally created additional issues with Unity's sensors while trying

to address a problem from a previous flight. As a result, the test flight scheduled for February 2021 was canceled, and no new launch date was provided. Following this news, the Company's stock declined by $5.01 or 11.8%, closing at $37.23 per share on February 26, 2021.

31.     In May 2021, the Company conducted a test flight, followed by Branson's high-profile trip to space in July 2021. The race to achieve the first passenger flight into space among Virgin Galactic, Blue Origin, and SpaceX was fiercely competitive in 2021. Virgin Galactic aimed to secure more capital by becoming the first commercial spaceflight provider. Achieving this milestone before Blue Origin and SpaceX would make it easier to generate funds. Additionally, Virgin Galactic had previously assured investors that a successful flight by Branson would reopen ticket sales for their space tourism operations, which had been on hold since October 2014.

32.     On June 6, 2021, Bezos announced that he would be aboard Blue Origin's inaugural space flight on July 20, 2021. This prompted Virgin Galactic to move up Branson's planned flight, initially scheduled for late July or early August 2021. Branson's flight was rescheduled for July 11, 2021, nine days before Bezos's flight. On July 11, 2021, Branson's Unity flight launched into space and was a success, as announced by Virgin Galactic. Upon landing, Branson said, "It was just magical. ... I'm just taking it all in; it's unreal."

33.     Defendants took advantage of positive development by selling $500 million of Virgin Galactic shares on the public market from July 12 to July 16, 2021. Branson also sold 10.4 million shares, generating $300.9 million in proceeds between August 10 and August 12, 2021. This sale included all of Branson's eligible Company shares at that time.

34.     However, during the July 2021 flight, Unity deviated from its designated "landing cone," violating FAA regulations. The landing cone ensures a controlled and safe descent by keeping the spacecraft within the intended landing zone. Unity's limited maneuverability after fuel

depletion makes staying within the cone crucial. Virgin Galactic later admitted that Unity spent one minute and forty-one seconds outside the landing cone, violating FAA regulations for more than 10% of its flight time.

35.     The FAA told *The Washington Post* that its investigation into Virgin Galactic's flights began on July 23, 2021, despite the Company's assertion that the FAA investigation commenced on August 11, 2021. Either way, Branson's stock sales occurred while the FAA was already investigating the Company and before the public announcement of the issues with Unity and the FAA investigation. The incident during Unity's flight in July 2021 became public knowledge only after the market closed on September 1, 2021, when *The New Yorker* published an article disclosing that Unity had deviated from its intended landing cone. Subsequently, on September 2, 2021, the FAA temporarily halted Virgin Galactic's flights. Following this news, the Company's stock price dropped, closing at $25.99 per share on September 2, 2021.

36.     Upon concluding its investigation in September 2021, the FAA cleared Virgin Galactic's future flights. The company obtained permission to resume flying after implementing corrective measures to prevent future violations of FAA regulations. However, extensive repairs required for its spaceships resulted in significant delays, preventing the commencement of commercial space tourism flights. Despite this, a test flight was scheduled for 2021 with members of the Italian Air Force planned to be taken into space. On October 14, 2021, Virgin Galactic announced that all further test flights would be postponed until at least the fourth quarter of 2022. This delay was due to a potential decrease in the strength margins of certain materials used in specific joint modifications on their spacecraft. Following this news, the Company's stock price dropped to $20.01 per share on October 15, 2021.

37.   

38.     Virgin Galactic promoted Branson's space flight as the event that would kickstart the Company's commercial space operations. However, more than a year passed since Branson's flight, and Virgin Galactic's spacecraft have yet to take off, and there is no indication that these commercial flights will begin anytime soon. In the Company's 10-Q filing with the SEC on August 4, 2022, Virgin Galactic disclosed that the start of commercial flights would be delayed until the second quarter of 2023. As a result, Plaintiffs bring this shareholder derivative litigation on behalf of Virgin Galactic to hold Defendants liable for their misconduct and disloyal actions, which have harmed Virgin Galactic.

39.     The Individual Defendants (excluding Bates, Osborne, Reses, and Wong) violated their fiduciary duties by allowing Legacy VG (later the Company) to operate unsafe flights. They were aware or negligently unaware that the vehicles: (1) were not designed for commercial use; (2) lacked essential engineering and technical documentation; (3) underwent undocumented mechanical alterations; (4) did not receive adequate maintenance for flight schedules; (5) developed cracks after each flight; and (6) were subject to an insufficient inspection regime. Moreover, Scaled Composites, the original designer, intended the vehicles to be prototypes. Legacy VG failed to develop new vehicles based on these designs due to extensive documentation issues. Legacy VG and later the Company were unaware of the exact configuration of Eve or

Unity. Unity's flight control system was also basic and prone to mechanical failures. Despite these issues, the Company proceeded with numerous test flights without addressing the known safety concerns (the "Unsafe Flight Misconduct").

40.     During the Relevant Period, the Individual Defendants breached their fiduciary duties by making false and misleading statements about the Company's business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, among other things, that: (1) Legacy VG (and later the Company) engaged in the Unsafe Flight Misconduct; (2) as a result of, and as part of, the Unsafe Flight Misconduct, during Legacy VG's February 2019 test flight, Unity's horizontal stabilizers experienced such significant damage due to human error that they would take fourteen months to replace, engendering delay; (3) following the destruction of Unity's horizontal stabilizers in February 2019, they were replaced, not "upgraded"; (4) the replacement horizontal stabilizers were made of aluminum rather than composite and, as such, were inferior; and (5) the Company failed to maintain adequate internal controls. As a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

41.     In breach of their fiduciary duties, the Individual Defendants failed to correct false and misleading statements and omissions of material fact or ensure adequate internal controls for disclosure, making them personally liable to the Company. The Legacy VG Defendants also aided and abetted the breaches of fiduciary duties by the SCH Defendants, who issued false and misleading statements about Legacy VG, the Merger, and the Company. Despite knowing the truth, the Legacy VG Defendants failed to correct the false and misleading statements.

42.     Similarly, the SCH Defendants violated their obligation to act in the best interest of the Company by approving the Merger with Legacy VG under unjustifiable terms given the undisclosed truth about Legacy VG's situation (the "Overpayment Misconduct"). Additionally, four of the Individual Defendants conducted insider sales while the Company's common stock was traded at artificially inflated prices due to the misrepresentations, resulting in approximately $774 million in proceeds. Furthermore, the Individual Defendants failed to maintain adequate internal controls, neglecting their fiduciary duties.

43.     The Individual Defendants' wrongful actions have resulted in a federal securities fraud class action lawsuit against the Company, its former controlling shareholder, its Chairperson, its current CEO, its former CEO, and the President of a wholly-owned Company subsidiary in the United States District Court for the Eastern District of New York (the "Securities Class Action"). This has necessitated internal investigations, the implementation of adequate internal controls, the loss of corporate assets, and losses due to the improper overcompensation and unjust enrichment of the Individual Defendants. As a result, the Company has incurred and will continue to incur significant financial expenses.

44.     Additionally, the Individual Defendants, many of whom are current directors of the Company (the "Director Defendants"), have breached their fiduciary duty and engaged in fraudulent activities. There is a high probability of the directors being held liable in both this derivative action and the Securities Class Action. Further, due to their interdependence, longstanding business and personal relationships, and lack of disinterestedness and independence, most of the Company's Board cannot objectively consider initiating legal action against themselves on behalf of the Company.

### III.    JURISDICTION AND VENUE

45.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1331 for the claims asserted herein for violations of the Exchange Act.

46.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

47.      This Court also has original jurisdiction over this action pursuant to 28 U.S.C. §1332 because Plaintiffs and Defendants are citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

48.      This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

49.      Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein occurred in this District, Defendants have conducted business in this District, and Defendants' actions have had an effect on this District.

## IV.     PARTIES

### A.  **Plaintiff**

50.      Plaintiff Samhita Ghera is a current shareholder of Virgin Galactic stock and has held and will continue to hold Virgin Galactic stock during all relevant times.

### B.  **Nominal Defendant**

51.      Nominal Defendant Virgin Galactic is a Delaware corporation with its principal executive offices at 1700 Flight Way, Tustin, California, 92782. Virgin Galactic common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "SPCE."

### C.  **Defendants**

*Defendant Branson*

18

52.     Defendant Richard Branson is a citizen of the British Virgin Islands. Branson is Virgin Galactic's founder, controlling stockholder, and the owner of the "Virgin" brand through his ownership of Virgin Group Holdings ("VGH"). VGH allows Branson to appoint management, control voting rights, and ultimately influence decisions across all Virgin-branded companies, including Virgin Galactic. When Virgin Galactic went public, Branson held 114,790,438 shares of Virgin Galactic's common stock, nearly 59% of its common stock, through a complex web of companies owned by VGH. Although he later sold a large portion of his shares, he still maintains indirect control through Virgin Investments Limited (VIL), which currently holds around 12% of Virgin Galactic's stock. This raises concerns about Branson using insider information while holding a controlling stake during the sale. Branson actively participated in merger negotiations and used the Stockholders' Agreement to ensure his continued influence over Virgin Galactic. Throughout its history, Branson has been the public face of Virgin Galactic, highlighting his pervasive control over the company.

53.     During the Relevant Period, when Virgin Galactic's stock price was artificially inflated, and before the scheme was exposed, Branson made the following sales of Company stock, selling a total of 16,000,000 shares for roughly $458 million:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|------|------------------|------------------|----------|
| April 12, 2021 | 1,900,000 | $27.77 | $52,772,500 |
| April 13, 2021 | 2,200,000 | $27.21 | $59,862,000 |
| April 14, 2021 | 1,484,000 | $27.16 | $40,311,376 |
| August 10, 2021 | 3,750,000 | $32.87 | $123,251,249 |
| August 11, 2021 | 3,641,000 | $27.91 | $101,638,515 |
| August 12, 2021 | 3,025,000 | $26.46 | $80,038,475 |

These sales made while possessing material nonpublic information about the Company's true financial health demonstrate his motive in facilitating and participating in the scheme.

***Defendant Palihapitiya***

54.     Defendant Chamath Palihapitiya is a citizen of California. Prior to the merger with Virgin Galactic, Palihapitiya held the positions of Chairman and CEO at Social Capital. Following the merger, the agreement stipulated his appointment as Virgin Galactic's Board Chairman, a role he held from October 2019 until February 2022. This positioned him with significant influence over the company's direction. Based on the proxy statement submitted by the Company to the SEC on July 13, 2021 (the "2021 Proxy Statement"), it was revealed that as of June 28, 2021, Palihapitiya held 15,750,000 shares of the Company's common stock, which accounted for 6.5% of the total shares outstanding. Considering that the closing price of the Company's common stock on June 28, 2021, stood at $54.84 per share, Palihapitiya's ownership of Virgin Galactic stock amounted to approximately $864 million.

55.     During the Relevant Period, when Virgin Galactic's stock price was artificially inflated, and before the scheme was exposed, Palihapitiya made the following sales of Company stock, selling a total of 10,000,000 shares for roughly $315 million:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|------|------------------|------------------|----------|
| December 14, 2020 | 2,000,000 | $27.11 | $54,210,000 |
| December 15, 2020 | 1,800,000 | $24.67 | $44,406,000 |
| March 2, 2021 | 3,100,000 | $35.93 | $111,376,799 |
| March 3, 2021 | 3,100,000 | $33.77 | $104,680,800 |

These sales made while possessing material nonpublic information about the Company's true financial health demonstrate his motive in facilitating and participating in the scheme.

### *Defendant Moses*

56.     Defendant Michael Moses is a citizen of California. Moses has been President of Space Missions and Safety at Galactic Enterprises since June 2016. From October 2011 to June 2016, he was Vice-President of Operations at Galactic Enterprises. As of June 28, 2021, Moses owned 256,605 shares of the Company's common stock, valued at approximately $14.1 million.

In the 2021 Fiscal Year, Moses received a total compensation of $3,286,400, including salary, stock awards, non-equity incentive plan compensation, and other forms of compensation. In the 2020 Fiscal Year, Moses received a total compensation of $9,342,979, including salary, stock awards, option awards, non-equity incentive plan compensation, and other forms of compensation.

### Defendant Whitesides

57.    Defendant George Whitesides is a citizen of California. Whitesides served as Chief Space Officer from July 2020 until he left the Company in February 2021. Before that, he was the CEO of Legacy VG since May 2010. According to the 2021 Proxy Statement, as of June 28, 2021, Whitesides owned 301,994 shares of the Company's common stock, valued at approximately $16.6 million based on the closing price of $54.84 per share. In the 2020 Fiscal Year, Whitesides received a total compensation of $14,679,129 from the Company, which included a salary of $454,500, stock awards worth $9,581,221, option awards totaling $4,613,679, and $29,729 in other compensation. In the 2019 Fiscal Year, his total compensation from the Company and Legacy VG amounted to $8,323,753. This included a salary of $346,346, a bonus of $1,536,863, stock awards valued at $1,384,605, option awards worth $4,988,505, non-equity incentive plan compensation of $48,383, and $19,051 in other compensation.

### Defendant Colglazier

58.    Defendant Michael Colglazier is a citizen of California. Colglazier has been CEO and a director of the Company since July 2020 and president of Virgin Galactic since February 2021. As of June 28, 2021, Colglazier owned 285,980 shares of the Company's common stock, as stated in the 2021 Proxy Statement. The closing price per share on that day was $54.84, which means Colglazier's ownership of Virgin Galactic stock was valued at approximately $15.7 million. In the 2021 Fiscal Year, Colglazier received a total compensation of $7,405,794 from the

Company. This compensation package included $1,000,000 in salary, a $500,000 bonus, $5,000,000 in stock awards, $880,000 in non-equity incentive plan compensation, and $25,794 in all other compensation. For the 2020 Fiscal Year, Colglazier received a total compensation of $22,055,600 from the Company. This compensation package included $442,308 in salary, a $500,000 bonus, $13,098,600 in stock awards, $7,540,000 in option awards, $452,055 in non-equity incentive plan compensation, and $22,637 in all other compensation.

### *Defendant Austin*

59.     Defendant Wanda Austin is a citizen of California. Austin has been a Company director since October 2019. She is also the Chairperson of the Compensation Committee and a member of the Safety Committee. As of June 28, 2021, Austin owned 16,383 shares of the Company's common stock, valued at approximately $898,000 based on the closing price of $54.84 per share. In the 2021 Fiscal Year, Austin received a total compensation of $282,500 from the Company, consisting of $157,500 in cash fees and $125,000 in stock awards. Her total compensation in the 2020 Fiscal Year was $270,280, including $145,286 in cash fees and $124,994 in stock awards. In the 2019 Fiscal Year, Austin received a total compensation of $331,205, with $31,206 in cash fees and $300,000 in stock awards. It is worth noting that the 2020 Proxy Statement incorrectly listed the total compensation as $331,206 instead of $331,205, despite the components adding up to the latter amount.

### *Defendant Bain*

60.     Defendant Adam Bain is a citizen of California. Bain has been a director at Virgin Galactic since the merger in October 2019 and previously served as a director at SCH since September 2017. Bain holds the position of Chairperson of the Nominating and Corporate Governance Committee and is a member of the Compensation Committee. As of June 28, 2021,

Bain had a beneficial ownership of 1,200,000 shares of the company's common stock, valued at approximately $65.8 million based on the stock's price of $54.84 per share. In the 2019 Fiscal Year, Bain received a total compensation of $12,516,000 from the company for his role as an SCH director involved in finalizing the Merger. This compensation solely comprised stock awards. As per the Merger Proxy Statement, Defendant Bain initially filled one of two directorships at Virgin Galactic, of which Defendant Palihapitiya had the right to designate the officeholder. Although Defendant Palihapitiya now has the right to nominate only one director, Defendant Bain continues to hold this position, creating a dependence on Defendant Palihapitiya.

### Defendant Jonas

61.     Defendant Tina Jonas is a citizen of Virginia. Jonas has served as a Company director since June 2021 and is a member of the Audit Committee and the Nominating and Corporate Governance Committee. For the 2021 Fiscal Year, Jonas received $355,913 in total compensation from the Company. This included $80,913 in fees earned or paid in cash and $275,000 in stock awards.

### Defendant Kreeger

62.     Defendant Craig Kreeger is a citizen of California. Kreeger has served as a Company director since the Merger in October 2019 and is a member of the Safety Committee and the Audit Committee. As of June 28, 2021, according to the 2021 Proxy Statement, Kreeger beneficially owned 26,383 shares of the Company's common stock. With the price per share of the Company's common stock at $54.84 at the close of trading on June 28, 2021, Kreeger's ownership was valued at approximately $1.45 million. For the 2021 Fiscal Year, Kreeger received a total compensation of $277,500 from the Company. This compensation included $152,500 in cash fees and $125,000 in stock awards. In the 2020 Fiscal Year, Kreeger received a total compensation of

$267,223 from the Company, which included $142,229 in cash fees and $124,994 in stock awards. In the 2019 Fiscal Year, Kreeger received a total compensation of $331,205 from the Company, consisting of $31,206 in cash fees and $300,000 in stock awards.

63.     During the Relevant Period, when Virgin Galactic's stock price was artificially inflated and before the scheme was exposed, Kreeger made the following sales of Company stock:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|------|------------------|------------------|----------|
| August 17, 2021 | 10,000 | $25.15 | $251,500 |

This sale made while possessing material nonpublic information about the Company's actual financial health demonstrates his motive in facilitating and participating in the scheme. According to the Merger Proxy Statement, Kreeger holds one of three directorships in Virgin Galactic designated by Vieco US, making him accountable to Branson, who controls Vieco US through Virgin Group Holdings Limited.

### *Defendant Lovell*

64.     Defendant Evan Lovell is a citizen of Vermont. Lovell has served as a Company director since the Merger in October 2019. He was appointed Interim Chairperson following Defendant Palihapitiya's resignation on February 17, 2022. In addition, he serves as a member of the Safety Committee. According to the Merger Proxy Statement, Defendant Lovell fills one of three directorships in Virgin Galactic, for which Vieco US retains the right to designate the officeholder. Thus, he is beholden to Defendant Branson, who controls Vieco US through Virgin Group Holdings Limited. As an initial eligible director, Lovell received $125,000 and a restricted stock unit award of $300,000. Lovell is a member of the Safety Committee and currently serves as Interim Chairperson of the Board. Lovell was a principal negotiator for Virgin Galactic during the Merger. Due to the extensive professional and financial connections through Virgin Group's portfolio of companies, including their roles at Virgin Galactic, Lovell is accountable to Branson.

24

### Defendant Mattson

65.      Defendant George Mattson is a citizen of Florida. Mattson has been a director of the Company since the Merger in October 2019. He also serves on the Compensation Committee and the Nominating and Corporate Governance Committee. As of June 28, 2021, according to the 2021 Proxy Statement, Mattson held 16,383 shares of the Company's common stock, valued at approximately $898,000 based on the closing price of $54.84 per share. In the 2021 Fiscal Year, Mattson received a total compensation of $284,048 from the Company, comprising $159,048 in cash fees and $125,000 in stock awards. His total compensation in the 2020 Fiscal Year was $246,147, with $121,153 in cash fees and $124,994 in stock awards. For the 2019 Fiscal Year, Mattson received $327,534 in total compensation, including $27,534 in cash fees and $300,000 in stock awards. As per the Merger Proxy Statement, Mattson occupies one of the three directorships at Virgin Galactic, for which Vieco US has the right to appoint the officeholder. This arrangement makes him accountable to Defendant Branson.

### Defendant Ryans

66.      Defendant James Ryan is a citizen of California. Ryans served as a director at Virgin Galactic starting from the Merger in October 2019 until his resignation in February 2021. Prior to the Merger, Ryans served as a director at Social Capital since 2018. During a portion of the relevant time period, he acted as the Chairperson of the Audit Committee and was a member of the Nominating and Governance Committee. In the fiscal year 2021, Ryans received a total compensation of $25,670 from the company, consisting of $25,670 in cash fees earned or paid. In the fiscal year 2020, Ryans received a total compensation of $278,155 from the company, including $153,161 in cash fees earned or paid and $124,994 in stock awards. In connection with his service as an SCH director who played a role in finalizing the merger, Ryans received a total

compensation of $1,377,877 from the company in the fiscal year 2019, including $34,877 in cash fees earned or paid and $1,343,000 in stock awards.

67.     During the Relevant Period, when Virgin Galactic's stock price was artificially inflated and before the scheme was exposed, Ryans made the following sales of Company stock:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|------|------------------|------------------|----------|
| December 16, 2020 | 30,000 | $26.43 | $792,900 |

This sale made while possessing material nonpublic information about the Company's actual financial health demonstrates his motive in facilitating and participating in the scheme.

### Defendant West

68.     Defendant W. Gilbert West is a citizen of Florida. West has served as a Virgin Galactic director since February 2021. He also serves as a member of the Safety Committee and the Audit Committee.

### Defendant Bates

69.     Defendant Anthony Bates is a citizen of California. Bates served as Vice Chairman of SCH's Board from May 2017 until the Merger.

### Defendant Osborne

70.     Defendant Ian Osborne is a citizen of California. Osborne served as President at SCH and was a board member from May 2017 until the Merger. Prior to the Merger, Osborne and Palihapitiya shared control of the Sponsor. As stated in the 2021 Proxy Statement, Palihapitiya directly owned 15,750,000 shares of Company common stock through the Sponsor. With the closing price of the Company's common stock on June 28, 2021, at $54.84 per share, Osborne's beneficial ownership of Virgin Galactic stock was approximately $864 million.

### Defendant Reses

71.     Defendant Jacqueline D. Reses is a citizen of California. Reses served as a SCH

director from February 2018 until the Merger. In the 2019 fiscal year, Reses received a total compensation of $1,043,000 from the Company for her role as a SCH director in facilitating the completion of the merger, which comprised solely of stock awards.

### Defendant Wong

72.     Defendant Andrea Wong is a citizen of California. Wong served as a SCH director from September 2017 until the merger. In the 2019 fiscal year, Wong received a total compensation of $1,043,000 from the company for her role as an SCH director in facilitating the completion of the merger, which consisted solely of stock awards.

## V.     FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

73.     Because of their positions as controlling shareholders, officers, directors, and fiduciaries of Virgin Galactic and their ability to control the affairs of the Company, the Individual Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care. They were and are required to use their utmost ability to control and manage Virgin Galactic in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders to benefit all shareholders equally.

74.     Each controlling shareholder, director, and officer of Virgin Galactic owed the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company, in the use and preservation of its property and assets, and in the highest obligations of fair dealing.

75.     In their positions of control and authority as controlling shareholders, directors, and officers of Virgin Galactic, the Individual Defendants had the ability to exercise control over the wrongful acts complained of herein. Virgin Galactic's officers and directors were required to exercise reasonable and prudent supervision over the Company's operations.

76.     Each Individual Defendant, due to their position as a controlling shareholder, director, and officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as controlling shareholders, directors, and officers of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants, who were also the controlling shareholders, officers, and directors of the Company, has been ratified by the remaining Individual Defendants, who collectively comprised the Company's Board at all relevant times.

77.     As controlling shareholders, senior executive officers, and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent the dissemination of inaccurate and untruthful information concerning Virgin Galactic's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations. They had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose so that the market price of the Company's common stock would be based upon truthful and accurate information.

78.     The Individual Defendants, in their capacity as controlling shareholders, officers, and directors of the Company, were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.

79.     The Individual Defendants' duties required, that they ensure that the Company was operated in a diligent, honest, and prudent manner pursuant to relevant laws and regulations and Virgin Galactic's Code of Business Conduct and Ethics; conduct the Company's affairs in an efficient, business-like manner and provide the highest quality performance of its business, avoid wasting the Company's assets, maximize the correct value of the Company's stock; remain informed of the Company's operations, and take steps to correct any improper conditions or practices; establish and maintain systematic and accurate records of the affairs of the Company and to investigate said reports and records; implement an adequate and functioning system of internal controls, so that the Company's financial statements and regulatory filings would be accurate; refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and examine and evaluate any reports concerning the financial affairs of the Company and make full and accurate disclosure of all material facts concerning each of the above duties.

80.     Each Individual Defendant further owed to the Company and its shareholders a duty of loyalty requiring that each favor the Company's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

81.     At all relevant times, the Individual Defendants were the agents of each other and the Company and were at all times acting within the course and scope of such agency.

82.     Because of their advisory, executive, managerial, directorial, and controlling shareholder positions with the Company, each Individual Defendant had access to adverse, nonpublic information about the Company.

83.     Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

## VI.    CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

84.     The Individual Defendants have engaged in a collective course of conduct and conspired with one another to commit the wrongful acts alleged herein and caused the Company to conceal the facts. Additionally, they collaborated and assisted each other in breaching their respective duties.

85.     The conspiracy, common enterprise and collective conduct aimed, among other objectives, to (i) enable and mask the Individual Defendants' unlawful activities, such as breaching fiduciary duties, unjust enrichment, abusing control, gross mismanagement, wasting corporate assets, and violating the Exchange Act; (ii) hide negative information about the Company's operations, financial status, legal compliance, future business outlook, and internal controls; and (iii) fraudulently inflate the Company's stock price.

86.     The Individual Defendants executed their conspiracy, common enterprise, and collective conduct by deliberately or recklessly causing the Company to conceal material facts, neglecting to rectify such misrepresentations, and violating relevant laws. In pursuit of this scheme and concerted effort, the Individual Defendants, jointly and individually, undertook the actions detailed herein. Given that these actions transpired under the Board's authority, each Individual Defendant serving as a director of the Company was a direct, essential, and significant participant in the alleged conspiracy, common enterprise, and collective conduct described herein.

87.     Each of the Individual Defendants actively aided, abetted, and provided substantial assistance in the misconduct alleged herein. By engaging in actions that significantly facilitated the commission of these wrongs, each Individual Defendant acted with actual or constructive awareness of the primary wrongdoing, either directly participating in it or substantially aiding its execution. They were or should have been aware of their substantial contribution to and advancement of these wrongful acts.

## VII.    THE DEFENDANTS' MISCONDUCT

88.     Defendants made numerous misrepresentations and significant omissions to make the Company appear significantly more valuable than it was, thus deceiving investors and enriching themselves at the Company's and its shareholders' expense.

89.     The Company had two spacecraft, Eve and Unity. They work together to carry a small crew into outer space. Virgin Galactic's vehicles are air-launched, meaning they are carried by a larger aircraft before they are released into space. Specifically, Eve carries Unity to 45,000 feet above Earth and releases it. Eve then returns to Earth while Unity ignites its onboard rockets and flies into space. This process expends all of Unity's fuel. Unity then spends a short time in space before gliding back down to Earth, where it is intended to land in a pre-planned landing zone. To ensure that this landing zone is reached despite Unity not having any fuel, it is crucial that Unity's descent occurs within a preplanned landing cone. Unity is required to stay within the area called the landing cone to ensure that the craft makes it back safely. Straying from the landing cone created a significant safety risk that could result in the destruction of the vehicle and kill everyone on board.

90.     On October 31, 2014, one of Scaled Composites' aircraft disintegrated during a test of one of its designs. The co-pilot was killed, and the pilot was seriously injured. Following an investigation, the FAA criticized the aircraft's design.

91.     Legacy VG then ceased its partnership with Scaled Composites and replaced it with The Spaceship Company, a sister company, to manufacture its aircraft. However, the safety issues continued with Unity's design even after Scaled Composites had been dropped.

92.     Over the next few years, as Legacy VG further developed, its shuttle safety issues continued to arise. For example, during a test flight on January 11, 2018, one of Unity's horizontal stabilizers malfunctioned, which was further complicated by the fact that Unity had no fuel for landing. The computer on board the spaceship was going berserk—alerts beeping, yellow and red lights flashing. The test pilot, Mark Stucky ("Stucky"), knew that if the problem went uncorrected, the aircraft would flip upside down. Stucky made various attempts to gain control of the vehicle without success. Stucky eventually regained control of the aircraft; however, had he not been successful, the aircraft likely would have crashed.

93.     Despite the incredibly dangerous flight and the serious safety issues, Legacy VG issued a glowing press release suggesting that the flight went smoothly and completely ignored the true serious dangers that arose during the flight.

94.     On April 5, 2018, Unity undertook another test flight. The flight once again experienced serious issues, and its gyroscope failed. Unity went upside down, but the gyroscope indicated that it was right-side up.

95.     Still, due to the extraordinary skills of its pilots and sheer luck, the flight landed safely. Legacy VG once again issued a press release presenting the test as a resounding success and avoided any mention of the serious malfunctions on the flight.

96.     On July 26, 2018, Unity undertook another test flight, which again experienced significant problems. During the flight, Unity rolled ten times the recommended rate. The test pilot

had to expend all of the RCS gas and nearly all of the backup RCS gas to get the aircraft under control.

97.     Legacy VG issued yet another rosy press release, addressing only the positive aspects of the flight without sufficiently mentioning the significant issues it had experienced.

98.     In December 2018, Legacy VG initiated another test flight. This flight once again experienced significant issues.

99.     On February 22, 2019, along with two pilots and a passenger, VG's chief customer trainer flew into space. As it had in the past, Legacy VG released glowing reviews about the flight; however, as with the prior flights, the statements were untrue, misleading, and covered up on the near disaster when Unity's horizontal stabilizer broke, which could have killed everyone on board.

100.    Numerous reports detailed that the company tried to cover up the true results of the flight in order to avoid scrutiny from potential investors before it went public and its merger with Social Capital Hedosophia. Additionally, following the flight, an employee remarked, "I don't know how we didn't lose the vehicle and kill three people."

101.    Although the Company's Board was aware of the problems with its aircraft, they kept it all a secret from the public until February 2021 and only released much of the relevant information much later. Defendants still presented the February 2019 Unity launch as a success. They covered up the numerous problems, including that everyone on board had nearly died because of negligent human error and lack of proper inspections. Further, Defendant Branson boasted about Unity's "successful" flight on his social media, suggesting that the flights were flawless and that the Company was not having any troubles with its spacecraft.

102.    The Company's vehicles, taken from Legacy VG after the Merger, suffered from numerous safety issues that were hidden from the public. The vehicles were not designed for

commercial use; they lacked key documentation, and Company personnel did not adequately keep track of changes made to the aircraft; vehicle maintenance was inadequate; the vehicles developed cracks after every flight; the vehicle's control system was inadequate; and the vehicles were not properly inspected.

103.     The issues began under Legacy VG and continued through the Relevant Period and the Merger in October 2019. Despite these issues being known internally, they were unresolved and were not disclosed to the public.

104.     Further, the Company's inspections were often described as a "pencil-whipping" or "ticking the box" exercise. In other words, inspectors signed off on the vehicles regardless of whether the inspections were done properly and sometimes did not occur at all. Instead, inspectors were controlled by deadlines, whether they were met or not.

105.     While these problems started at Legacy VG prior to the Relevant Period, they continued with Virgin Galactic through the Relevant Period. The vehicles were still suffering from safety defects when, on October 14, 2021, the Company finally revealed it was canceling its remaining test flights until at least late 2022 due to the issues.

106.     Further, throughout the Relevant Period, the Individual Defendants caused the Company to fail to abide by FAA regulations, including § 431.39 and § 431.41, which required the Company to ensure and document safety procedures.

107.     On February 28, 2022, Virgin Galactic filed its 2021 annual report on Form 10-K with the SEC. One of its provisions explained that the Company was obligated to follow FAA regulations. The statement clearly indicated that Defendants were aware that Virgin Galactic was required to abide by FAA regulations. Yet, the Company failed to take the proper steps to adhere to the FAA guidelines.

108.     Defendants' motivation to conceal the issues that plagued the Company's vehicles was clearly to close the Merger on terms favorable to themselves personally and at the expense of the Company and its shareholders. Following the Merger, the Individual Defendants continued to misrepresent and conceal the structural and safety issues with their spacecraft. They made false and misleading statements and omissions about Virgin Galactic and its business prospects in order to present the Company as a safe investment, thus deceiving investors and artificially inflating the price of the Company's stock.

109.     On July 9, 2019, Legacy VG and SCH issued a joint press release announcing the planned Merger and stating the VG was progressing "towards launching commercial operations." And it had "overcome a substantial number of the technical hurdles required to make the company a viable and profitable commercial service."

110.     Many further statements from Branson and Palihapitiya and letters were filed with the SEC regarding the viability of space travel and how VG was on the way to creating safe spaceflight. None of these statements mentioned anything about the serious challenges they were actually facing due to the prior safety issues on the test flights and that the Company was nowhere near regular commercial spaceflights.

111.     These statements were materially false and misleading and failed to disclose the facts necessary to make the statements not materially false and misleading. Specifically, these statements failed to disclose the serious issues and challenges that the company faced regarding safety issues on the flights and that the company was a long way from a viable and safe commercial space flight.

112.     On August 7, 2019, the Company filed a registration statement with the SEC on Form S-4 (the "Registration Statement"). It was signed by Defendants Palihapitiya, Osborne,

Bates, Bain, Wong, Reses, and Ryans. The Registration Statement stated that the Company manufactures and operates highly sophisticated spaceflight systems and offers a specialized astronaut experience that depends on complex technology. The Registration Statement overstated the efforts taken to ensure the quality and safety of its vehicles, and it described certain risks to the Company's operations as hypothetical, although they were already happening.

113.    The above statements contained were repeated in amendments to the Registration Statement filed on September 13 and 25, 2019, and October 3 and 8, 2019, in another registration statement filed on February 14, 2020, again in an amendment filed on February 28, 2020, in the Form 10-K filed by the Company on February 28, 2020, in a registration statement filed on May 1, 2020, and again in an amendment filed on May 11, 2020; in a registration statement filed on August 3, 2020; in the Form 10-K filed by the Company on March 1, 2021 and amended on March 11, 2021; and in a registration statement filed on May 28, 2021 and amended on June 17, 2021.

114.    On August 16, 2019, the Company filed a proxy statement with the SEC on Schedule 14A (the "August 2019 Proxy Statement"). The August 2019 Proxy Statement requested shareholders to vote to extend the time to complete a merger from September 18, 2019, to December 18, 2019.

115.    The August 2019 Proxy Statement failed to disclose the SCH Defendants' conflicts of interest and that they were planning the Merger on terms that were unfavorable to the Company, given Legacy VG's involvement in the Unsafe Flight Misconduct. The SCH Defendants were engaged in the Overpayment Misconduct to benefit themselves at the expense of the Company and its shareholders. Due to these false and misleading statements in the August 2019 Proxy Statement, Company shareholders approved extending the merger deadline.

116.     On October 10, 2019, the Company filed the Merger Proxy Statement with the SEC. The Defendants solicited the Merger Proxy Statement, which contained materially misleading statements.

117.     The Merger Proxy Statement requested Company shareholders to vote to effect the Merger and elect Defendants to Virgin Galactic's Board; approve the issuance of Virgin Galactic stock to Vieco US (i.e., Defendant Branson) and Defendant Palihapitiya; approve the 2019 Incentive Award Plan (the "2019 Plan") under which certain Individual Defendants would be eligible to receive compensation; and approve a repurchase of up to $200 million worth of Vieco US's shares of Virgin Galactic common stock.

118.     The Merger Proxy Statement overstated Legacy VG's efforts to ensure the quality and safety of its vehicles and described certain risks to the Company as hypothetical, though they were already happening.

119.     These statements were materially false and misleading and failed to disclose the facts necessary to make the statements not materially false and misleading.

120.     Due to the false and misleading elements of the Merger Proxy Statement, the Company shareholders voted to approve numerous proposals necessary to effect the Merger, elect Defendants to Virgin Galactic's Board, allowing them to continue breaching their fiduciary duties to the Company, approve the issuance of Virgin Galactic stock to Vieco US and Defendant Palihapitiya; approve 2019 Plan under which certain Defendants would receive compensation that was unjust in light of their misconduct; and approve a repurchase of up to $200 million worth of Vieco US's shares of Virgin Galactic common stock, unjustly enriching him in light of his misconduct.

121.     Additionally, Defendants Branson and Palihapitiya made statements in public interviews that misrepresented the Company's true situation and misled investors.

122.     On December 13, 2019, the Company issued a press release on its website titled "Reflecting on a Remarkable Year." The press release touted the supposed success of the Company's first passenger flight in February 2019,

123.     On February 25, 2020, the Company issued a press release and held an earnings call to discuss its financial results for the quarter and full year ended December 31, 2019. The press release contained the following statement from Defendant Whitesides:

124.     On April 20, 2020, the Company filed the 2020 Proxy Statement with the SEC. Defendants Whitesides, Palihapitiya, Austin, Bain, Kreeger, Lovell, Mattson, and Ryans solicited the 2020 Proxy Statement containing material misstatements and omissions.

125.     The 2020 Proxy Statement asked Company shareholders to vote to elect many of the Individual Defendants to the Board and the compensation of many of the Individual Defendants.

126.     The 2020 Proxy Statement also outlined the responsibilities of the Company's Safety Committee, including reviewing safety performance processes to ensure compliance with internal policies and goals and applicable laws and regulations; providing input on the management of current and emerging safety issues; assisting oversight of risk management and security processes;  reviewing safety audit findings and resulting action plans; and periodically visiting facilities and reviewing any safety issues.

127.     The 2020 Proxy Statement was materially misleading because it failed to disclose that the Board and its committees were not adequately exercising these functions and were causing or permitting the Company to engage in Unsafe Flight Misconduct and issue false and misleading

statements; the Safety Committee was not reviewing the Company's safety performance and did not have processes to ensure compliance with applicable laws and regulations; certain Individual Defendants were violating the Code of Conduct without obtaining waivers or else without such waivers being disclosed; and certain Individual Defendants, including those soliciting the 2020 Proxy Statement, were breaching their fiduciary duties to the Company and its shareholders and were thus improperly interested in receiving unjust compensation under the 2019 Plan, not merely seeking to obtain and retain the services of qualified individuals.

128. Additionally, the Individual Defendants caused the Company to make similar and additional false and misleading statements on the May 5, 2020, Earnings Call, a June 25, 2020, press release, a July 15, 2020 Call Regarding the New CEO, a July 28, 2020, Promotional Video, as well on numerous other occasions.

129. The statements made were materially false and misleading and failed to disclose the facts necessary to make the statements made not materially false and misleading.

130. On August 3, 2020, the Company announced that Branson would not fly into space in 2020 as previously announced. It had been unrealistic that Defendant Branson would fly in 2020 due to the nearly catastrophic flight in February 2019 that grounded the remaining test flights for the rest of the year for required maintenance.

131. On August 4, 2020, following the news that Defendant Branson's flight would be postponed, the Company's stock price fell 13.7% to $20.72 per share.

132. However, the Individual Defendants continued to make and cause the Company to make materially false and misleading statements about the Company's business, operations, and prospects to mislead investors into believing that the Company had a viable plan to take commercial passengers into space.

133.    The Individual Defendants made and caused the Company to issue numerous false and misleading statements regarding the safety and viability of the Company's aircraft, including on October 14, 2020, November 2, 2020, and November 5, 2020, Press Release and Earnings Call.

134.    On Monday, December 14, 2020, the Company issued a press release announcing that the rocket did not ignite and that Unity had glided back down to Earth instead. However, the Company did not reveal that the EMI from the new digital control system caused Unity's problems.

135.    Nevertheless, on December 14, 2020, the Company's share price fell $5.57 or 17.4% to close at $26.47 per share.

136.    On February 1, 2021, the Company issued a press release stating that it had planned a new powered-test flight for February 2021, particularly after February 13, 2021.

137.    This news caused the Company's share price to soar to close at $53.79 on February 1, 2021.

138.    However, that same day, after markets closed, The Washington Post published an article noting that the February 2019 test flight had nearly killed everyone on board.

139.    By the close of trading on February 2, 2021, the Company's share price had fallen to $48.58 per share.

140.    However, even as the truth emerged, certain Individual Defendants continued to cause and permit the Company to issue additional false and misleading statements.

141.    In a press release issued on February 25, 2021, the Company revealed that it was working on remedying problems related to the December 2020 rocket ignition failure.

142.    On this news, the Company's common stock declined by $5.01 or 11.8% to close on February 26, 2021, at $37.23 per share.

143.    The following day, the Company issued a press release announcing that Unity's next rocket-powered test flight would be conducted on May 22.

144.    The 2021 Proxy Statement was also materially misleading because it failed to disclose that the Company was still engaged in undisclosed aspects of the Unsafe Flight Misconduct, including a lack of adequate inspections and cracks appearing on Unity and Eve after every flight.

145.    Due to the false and misleading elements of the 2021 Proxy Statement, Company shareholders voted, among other things, to elect some of the Individual Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company and approving the compensation of the Individual Defendants.

146.    At all relevant times, the Board concealed material information it had about the FAA investigation (and other relevant matters) from the public.

147.    The Company's vehicles were then grounded by the FAA, and on that news, the price per share of the Company's common stock closed on September 2, 2021, at $25.99 per share.

148.    On September 16, 2021, the Company informed the public that it had resolved all issues pertaining to the FAA's concerns about Unity's previous airspace excursion. However, the Company failed to disclose that the FAA had still not given the Company the approval it needed to restart its commercial space flights.

149.    Then, on October 14, 2021, the Company issued a press release stating that a planned demonstration with members of the Italian Air Force was being delayed until the fourth quarter of 2022 due to the results of "recent laboratory-based tests."

150.     On this news, the price of the Company's common stock fell over 16.9%, or $4.05 per share, from closing at $24.06 per share on October 14, 2021, to close at $20.01 per share on October 15, 2021.

## VIII.     DERIVATIVE ALLEGATIONS

151.     Plaintiffs bring this derivative action on behalf of Virgin Galactic to address and seek compensation for injuries resulting from and to be suffered due to the Individual Defendants' breaches of their fiduciary duties as controlling shareholders, directors, and officers of the Company, including claims of unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, violations of the Exchange Act, and participation therein.

153.     Virgin Galactic is named solely as a nominal party. This is not a collusive effort to confer jurisdiction that this Court would not otherwise have.

154.     Plaintiffs have been shareholders of the Company at all relevant times. They will adequately and fairly represent the Company's interests in enforcing and prosecuting this action. Plaintiffs have retained competent and experienced counsel to pursue this matter.

## IX.     DEMAND FUTILITY ALLEGATIONS

155.     Plaintiff realleges and incorporates by reference each and every allegation stated above as if fully set forth herein.

156.     Plaintiff is a current owner of Virgin Galactic common stock and was the owner of Virgin Galactic common stock during the Relevant Period when Defendants' wrongful course of conduct occurred. Virgin Galactic is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

157.     Plaintiff brings this action derivatively to redress injuries suffered, and to be suffered, by the Company as a direct result of the Defendants' breaches of fiduciary duty, unjust

enrichment, corporate waste, contribution, and indemnification, and violations of Section 14(a) of the Exchange Act. Plaintiff will adequately and fairly represent the interests of Virgin Galactic in enforcing and prosecuting its rights. Prosecution of this action, independent of the Virgin Galactic Board, is in the best interests of the Company.

158.     At the time of filing of this action, Virgin Galactic's Board consisted of nine directors: Defendants Colglazier, Austin, Bain, Jonas, Kreeger, Lovell, Mattson, and West (collectively, the "Director-Defendants") along with nonparty Wanda Sigur (collectively, with the Director-Defendants, the "Directors"). Plaintiff must only allege demand futility for five of nine directors. As alleged above, the Director-Defendants breached their fiduciary duties of loyalty and good faith by engaging in a course of conduct that violated federal laws and regulations and the Company's policies and by failing to disclose material adverse information regarding Virgin Galactic's business to the public. At the same time, insiders and the Company sold approximately $2 billion of the Company's stock.

159.     Plaintiff has not made a demand on Virgin Galactic's current Board (the "Demand Board") to bring an action on behalf of the Company asserting claims herein to recover damages for the injuries suffered by Virgin Galactic since such demand would have been a futile, wasteful and useless act, and is therefore excused, for the reasons stated herein. These actions made by the Director-Defendants render them unable to impartially investigate the charges and decide whether to pursue an action against themselves and the other perpetrators of this scheme.

**A.  Demand Defendants Are Likely to Violate Their Fiduciary Duties**

160.     An excuse for demand is warranted as the Director Defendants, under the leadership of Palihapitiya, are likely to be held liable for the claims made against them in this Complaint. This is due to their deliberate failure to disclose significant nonpublic information, including the

fact that (1) Legacy VG (and later the Company) engaged in unsafe flight misconduct; (2) as a result of the unsafe flight misconduct and during Legacy VG's February 2019 test flight, Unity's horizontal stabilizers experienced significant damage caused by human error, resulting in a replacement process that took fourteen months and caused delays; (3) despite the extensive damage to Unity's horizontal stabilizers, they were only replaced and not upgraded; (4) the replacement horizontal stabilizers were inferior, as they were made of aluminum rather than composite; (5) the violation of FAA regulations during a July 2021 flight, leading to the grounding of the Company's spaceships and the temporary revocation of its commercial flight license; and (6) the Company failed to maintain adequate internal controls.

161.    While this material information was being concealed from investors, more than half of the Board directed the Company to raise its capital pursuant to the Stockholders' Agreement and obtained Branson's approval. No action has been taken against Branson, Palihapitiya, and Kreeger for selling more than $1.3 billion of their personal Virgin Galactic stock while having access to material nonpublic information. Furthermore, the Director Defendants neglected their oversight duties by permitting Virgin Galactic's spaceships to operate without ensuring adequate safety systems to comply with the FAA's regulations. This failure put the Company's spaceships at risk of causing a catastrophic event or losing its license to operate commercial spacecraft.

162.    Moreover, a significant majority of the Demand Board is unable to impartially evaluate a demand due to their membership in the Audit Committee (namely, Jonas, Kreeger, and West) and the Safety Committee (namely, Austin, Lovell, Kreeger, and West). These defendants have neglected their oversight duties regarding the Company's adherence to crucial FAA regulations. Additionally, the Company has acknowledged its lack of safety systems to comply with § 431.39 and § 431.41.

163. 

164.     In a clear failure to fulfill their fiduciary responsibilities, the Director-Defendants knowingly or recklessly made inaccurate and deceptive statements to enhance the Company's perceived profitability and appeal to investors. Consequently, they violated their fiduciary duties and are likely to be held liable. Therefore, they lack impartiality, and the demand for action upon them is futile and excused.

165.     As detailed below, the allegations indicate that pursuing a demand on the Demand Board would be futile, as they suggest that each of the Director Defendants is unable to independently assess claims brought against the other Defendants.

166.     Defendant Colglazier has served as the CEO and director of Virgin Galactic since July 2020. He also became the President in February 2021. The Company is his primary occupation, and he receives significant compensation, as mentioned above. The Company, in its proxy statements, acknowledges that Colglazier is a non-independent director. As CEO, Colglazier bears ultimate responsibility for the Company's involvement in the Unsafe Flight Misconduct and the numerous false and misleading statements and omissions that followed his appointment. This encompasses statements he personally made in a promotional video, during earnings calls, and in

interviews. Colglazier is also a defendant in the Securities Class Action. For these reasons, Colglazier breached his fiduciary duties, faces a high likelihood of liability, and lacks independence or impartiality. Therefore, any demand on him is futile and excused.

167.    Defendant Austin has served as a company director since October 2019 and is a member of the Safety Committee. Austin lacks the independence to sue her fellow board members due to her income as a Virgin Galactic director. Consequently, Austin is motivated to maintain her income as a Virgin Galactic director, compromising her independence. Austin also owes her position on the Board to Branson and Palihapitiya. Her lack of independence is further evident in her rejection of the resignation offers from directors Bain, Mattson, and Kreeger. These directors were no longer eligible to be appointed to the Board by Branson and Palihapitiya under the terms of the Stockholders' Agreement. In her position, Austin allowed the Company to disseminate false and misleading statements, including those found in public offering documents. She did so by concealing material nonpublic information about the Company's operations. For these reasons, Austin breached her fiduciary duties, faces a high likelihood of liability, and lacks independence or impartiality. Therefore, any demand on her is futile and excused.

168.    Defendant Bain has served as a company director since October 2019, was a director of SCH since September 2017, and is a member of the Safety Committee. Bain failed in his oversight duties regarding the Company's compliance with FAA regulations. He also allowed the dissemination of false and misleading statements, including in public offering documents, by concealing material nonpublic information about the Company's operations. Due to these breaches, Bain is likely liable for breaching his fiduciary duties and acting disloyally and in bad faith. Additionally, in connection with his position as a director of SCH and his involvement in the Merger, Bain was granted stock awards amounting to $12,516,000.

169.    

170.    Further, Bain is unlikely to pursue any action against Ryans due to their extensive professional relationship. Both individuals previously served on SCH's Board before the Merger, and Ryans currently holds the position of SCH's CFO alongside Palihapitiya, with whom Bain lacks independence. Similarly, Bain is unlikely to pursue any action against Branson, as he regards him as an "icon." Moreover, Bain obtained substantial financial gains from Branson's decision to merge with SCH to take Virgin Galactic public. Finally, it is improbable that Bain pursued any action against Palihapitiya because of their close relationship as friends and investors.

171.    For these reasons, Bain breached his fiduciary duties, faces a high likelihood of liability, and lacks independence or impartiality. Therefore, any demand on him is futile and accordingly excused.

## X.   COUNTS

### COUNT I

(Breach of Fiduciary Duty)

172.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

173.    Each Defendant had a fiduciary relationship with the Company and its stockholders and owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care while managing the affairs of the Company.

174.    Each Defendant deliberately breached their fiduciary duties of good faith, fair dealing, loyalty, and due care to the Company by engaging in a broad range of conduct that violated federal laws and regulations and Company policy and failing to disclose material adverse information regarding the Company to the public while selling billions of the Company's stock based on such information.

175.    Each Defendant deliberately breached their oversight duties to the Company by allowing the Company's vehicles to fly in violation of FAA regulations.

176.    Additionally, the Defendants had specific fiduciary duties as outlined in the Company's corporate policies that should have prevented the misconduct and the subsequent harm to the Company.

177.    Further, the Defendants violated their fiduciary duties of care, loyalty, and good faith by allowing the Company to distribute materially misleading and inaccurate information through SEC filings and other public statements that failed to disclose the truth about the Company. These actions were not a good faith exercise of prudent business judgment.

178.    As a direct and proximate result of the Defendants' breaches of their fiduciary obligations, the Company has sustained significant damages, including damages resulting from the

securities fraud class action, loss of reputation, loss in market capitalization, and the misuse of the Company's proprietary nonpublic information by the selling stockholders.

## COUNT II

(Breach of Fiduciary Duty for Insider Selling and Misappropriation of Confidential Information Against Defendants Branson, Kreeger, and Palihapitiya)

179.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth in this paragraph.

180.     As a controlling stockholder of the Company, Branson owed the highest fiduciary obligations of good faith, fair dealing, loyalty, and due care to the Company's shareholders when dealing with Company information.

181.     Palihapitiya was also a controlling member of the Company and owed the highest fiduciary obligations of good faith, fair dealing, loyalty, and due care to the Company's shareholders when dealing with Company information.

182.     As a director of the Company, Kreeger also owed the highest fiduciary obligations of good faith, fair dealing, loyalty, and due care to the Company's shareholders when dealing with Company information.

183.     As a result of their insider knowledge of the material information about the Company described above, Defendants Branson, Kreeger, and Palihapitiya disposed of their Company stock, providing them with a significant advantage to the detriment of the Company and its stockholders. Information such as (i) the destruction of the horizontal stabilizers on the Company's vehicle in February 2019, (ii) the grounding of the Company's vehicles, and the revocation of the Company's commercial flight license due to FAA regulation violations in July 2021; and (iii) a protracted delay of the Company's operations because the Company's vehicles required significant repairs. Defendants Branson, Kreeger, and Palihapitiya used the Company's

proprietary information improperly for their own personal benefit and sold over $1.3 billion of the Company's stock to the detriment of the Company.

## COUNT III

(Unjust Enrichment Against All Defendants)

184.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth in this paragraph.

185.     Defendants were unjustly enriched at the expense of and to the detriment of Virgin Galactic and its shareholders through various forms of compensation to the detriment of the Company.

186.     As a stockholder and representative of the Company, Plaintiff seeks restitution from all Defendants and an order from the Court that Defendants must disgorge all benefits they obtained through their wrongful conduct and return them to the Company and its shareholders.

## COUNT IV

(Contribution and Indemnification Against all Defendants)

187.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth in this paragraph.

188.     Virgin Galactic is accused of wrongdoing and alleged to be liable to various individuals and entities based on the facts alleged herein.

189.     Such liability arises from the acts or omissions of the Defendants, and the Company is entitled to contribution and indemnification from each Defendant in connection with any and all such claims that have been or may be asserted against the Company in the future due to the misconduct of the Defendants.

## COUNT V

(Violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Against the Proxy
Defendants)

190.    Plaintiff incorporates by reference and realleges each of the foregoing allegations
as though fully set forth herein.

191.    The Defendants issued materially misleading written statements to shareholders in
the 2021 Proxy Statement, which urged the Company shareholders to elect the Defendants to the
Board. However, the 2021 Proxy Statement falsely implied that the Board was managing risk
effectively and omitted critical facts, including that in July 2021, the Company violated FAA
regulations, resulting in the grounding of the Company's spaceships and the revocation of the
Company's commercial flight license and that the Company's commercial operations would be
significantly delayed as extensive repairs were necessary.

192.    As a direct and proximate result of the material misleading statements and other
wrongful conduct, Defendants misled and deceived the Company's shareholders, which effectively
induced the Company's shareholders to elect the current Board, thus violating Section 14(a) of the
Exchange Act.

193.    On behalf of the Company, Plaintiff seeks relief for damages based upon the
misleading 2021 Proxy Statement related to the improper election of the members to the Board.

194.    This action was commenced within three years of the date of the 2021 Proxy
Statement and within one year since Plaintiff could have reasonably discovered the facts on which
this Complaint is based and is thus timely.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Virgin Galactic and
that Plaintiff is an adequate representative of the Company;

B.    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Virgin Galactic;

C.    Determining and awarding to Virgin Galactic the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

D.    Directing Virgin Galactic and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Virgin Galactic and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies and taking other remedial actions that may be necessary;

E.    Extraordinary equitable or injunctive relief as permitted by law or equity, including attaching, impounding, imposing a constructive trust on, or otherwise restricting Defendants' assets to assure that Plaintiff, on behalf of Virgin Galactic, has an effective remedy;

F.    Awarding Virgin Galactic restitution from the Individual Defendants and each of them;

G.    Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees, consultant and experts' fees, costs, and expenses; and

H.    Granting such other and further relief as the Court may deem just and proper.

## XII.    JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 9, 2024

Respectfully submitted,

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**

/s/ *Peretz Bronstein*
Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600
New York, New York 10165
212.697.8209
peretz@bgandg.com
eitank@bgandg.com